conflicting with some of the evidence found in the progress of the trial. Under the rule which is to the effect that the new evidence must be of such importance that it would probably overcome all the evidence given upon the trial inconsistent with that newly discovered, we think the trial judge committed no error in refusing to grant a new trial. Adams v. Bush, 2 Abb. Prac. (N. S.) 104; Railroad Co. v. Sage, 35 Hun, 95. The trial judge saw the witnesses during the progress of the trial, and was called upon to judge as to whether or no, in his opinion, the affidavits furnished indication of such evidence as, if considered in connection with that given upon the trial, would lead to a different result; and his judgment, and therefore his decision, in the premises, was that the alleged newly-discovered evidence would not produce a change of result. We are not persuaded that he committed any error in that regard. We are of the opinion that the judgment and orders should be affirmed, with costs. °

Judgment and orders affirmed, with costs. All concur.

(89 Hun, 229.)

### DE WITT v. AGRICULTURAL INS. CO. OF WATERTOWN.

(Supreme Court, General Term, Second Department. July, 1895.)

1. INSURANCE—PROCURING ADDITIONAL INSURANCE.

The owner of insured real estate conveyed it, taking back a mortgage, and the insurance company indorsed on the policy that the grantee "is now recognized as owner of this policy and the property mentioned as insured hereunder," subject to the conditions of the policy, "loss, if any, payable to * * * mortgagee as interest may appear. $20,000 incumbrance is hereby permitted." The grantee contracted to sell and convey it to N., who took possession, and commenced repairs, and took additional insurance in another company. Held, that N. was not, at the time he procured additional insurance, "the insured," within a condition in the first policy, providing that it should be void if the insured now had or procured other insurance, except by agreement indorsed on or added to the policy; nor did he become such by subsequent indorsement on the first policy by the company, without his knowledge, and by procurement of the mortgagee, "that N. is now recognized as owner of this policy and the property mentioned as insured hereunder," subject to its conditions.

2. SAME—WHAT CONSTITUTES—ADDITIONAL INSURANCE.

The owner of real estate insured for the benefit of a mortgagee contracted to sell and convey it to N., who took possession and commenced repairs, and procured additional insurance in another company. Afterwards, without his knowledge, the mortgagee applied to the company issuing the first policy, and it indorsed thereon: "N. is now recognized as owner of this policy and the property mentioned as insured thereunder," subject to the conditions of the policy. Held, that the insurance procured by N. was not "additional insurance," within a condition of the first policy providing that it should be void if the insured had or procured additional insurance, except by agreement indorsed on or added to the policy. Sanders v. Cooper, 22 N. E. 212, 115 N. Y. 279, and Moore v. Insurance Co., 36 N. E. 191, 141 N. Y. 219, distinguished.

3. SAME—PROOFS OF LOSS—WAIVER.

The owner of real estate insured for the benefit of a mortgagee contracted to sell and convey it to N., who took possession, and commenced repairs, and procured additional insurance in another company. The mortgagee, without N.'s knowledge, procured an indorsement on his policy by the company that "N. is now recognized as owner of this policy and

the property mentioned as insured hereunder," subject to its conditions. After loss, N. served on the company issuing the first policy proofs of loss, which were kept without objection that they were not served by the proper party, or were not proper in form or substance; and such mortgagee afterwards assigned all his rights to N. *Held*, that such company could not set up, as a defense to an action by N.'s assignee on its policy, a failure to comply with a condition requiring proofs of loss to be served by the insured.

4. ACTION ON FIRE POLICY—AMOUNT OF RECOVERY.

In an action on a fire policy on real estate, it appeared that it was payable to a mortgagee as his interest appeared; that the owner of the property contracted to sell and convey it to N., who took possession, and commenced repairs, and procured additional insurance in another company, without defendant's consent. *Held*, that the amount of recovery by plaintiff, who was the assignee of the mortgagee's as well as N.'s interest in such policy, could not be reduced on account of the additional insurance procured by N.

Appeal from special term, Westchester county.

Action by Peter De Witt against Agricultural Insurance Company of Watertown on a policy of fire insurance. There was a judgment in favor of plaintiff, and defendant appeals. Affirmed.

The opinion of Noah Davis, Esq., to whom the cause was referred to hear and determine, is as follows:

This case is, in my judgment, distinguishable in its facts, in some respects, from all the great number of cases that have been called to my attention by counsel, or examined by me. No question is made or suggested but that the policy issued by defendant to Hanford Lockwood was a valid and obligatory instrument in his hands. It was made on the 27th day of June, 1892, and it is not suggested but that every requirement and condition of the policy was then fully met and complied with. Lockwood was then the owner of the property insured. He subsequently sold and conveyed that property to one Warren E. Smith; and thereupon defendant, with full notice of that fact, made an indorsement on the policy in these words:

"Warren E. Smith is now recognized as owner of this policy, and the property mentioned as insured hereinunder, subject, nevertheless, to all the rules and conditions of this policy, none of which are hereby waived or avoided; and loss, if any, first payable to Hanford Lockwood, mortgagee, as interest may appear. Twenty thousand dollars incumbrance is hereby permitted.

"Dated at N. Y. City, August 18th, 1892."

Afterwards, and on the 23d day of November, 1892, Smith bargained and sold the insured property to George E. Nichols, who, it seems, took possession, and commenced repairing the buildings. Mr. Lockwood still held the policy of insurance for the purpose of the security of his mortgage in case of loss, as permitted by the indorsement of the company. Afterwards, and on about the 27th of December, 1892, Lockwood applied to the defendant company, and, presumably upon a statement of the existing facts, the company made another indorsement on the policy, in these words:

"George E. Nichols is now recognized as owner of this policy, and the property mentioned as insured hereinunder, subject, nevertheless, to all the rules and conditions of this policy, none of which are hereby waived or avoided.

"Dated at N. Y. City, Dec. 27th, 1892."

This indorsement was obtained and made without the knowledge of Mr. Nichols at the time it was made. Its obvious purpose was to keep the policy in full vigor for the benefit of Mr. Lockwood, to whom the loss, if any, was made payable by the former indorsement. Courts are bound to construe such indorsements in such manner as to give them full vigor and effect for the purposes for which they were made and intended. In my judgment, the manifest intent in this instance was to keep the policy in full force for the

benefit of all concerned, as security for the payment of the mortgage held by Mr. Lockwood, and that necessarily involved the benefit of the property owner. It is shown that, at the time of the making of this indorsement, Mr. Nichols, the purchaser of the property from Smith, did not know of the indorsement then made on the policy, and is, of course, not chargeable with any misrepresentation, if any were made; but it is not alleged or claimed that there was any fraud or misrepresentation on the part of any one. On the 22d day of December, 1892, Nichols (who had entered into possession of the property purchased from Smith, and was engaged in making repairs, etc., but had not yet received a conveyance) applied to the Liverpool, London & Globe Insurance Company for insurance on the buildings, and obtained a policy in the sum of $3,500 on the dwelling, and $1,500 on the stable, which policy was in full effect when the insured property was destroyed by fire. This insurance, it will be observed, was obtained by Nichols five days before the indorsement last above set forth was made by the defendant upon the Lockwood policy. The original policy of defendant contains a clause in these words: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy." Such a condition is to be strictly construed, because of its severe nature, as a penal one. It will be observed that it only applies by its terms to "the insured"; that is, the person actually occupying the position of "the insured" under defendant's policy at the time the policy issues, or at the time the additional insurance is taken. On the 22d day of December, 1892, Nichols occupied no such relation to the policy held by Lockwood as "the insured." He was then no party to the contract, though he might be incidentally benefited by it if a loss had occurred and been paid by the company to Lockwood under the indorsement then existing on the policy. What his equities may have been, if any, in that regard, is not shown. But it does appear with absolute certainty that on the 22d day of December, 1892, when he took out the policy of the Liverpool, etc., Company, he was not "the insured" under the policy of defendant. No forfeiture could therefore attach by reason of the act of Nichols in taking the new insurance, nor could the rights of Lockwood be destroyed or impaired by such act on his part under the then condition of the policy. But if it be granted that the indorsement made by the company five days afterwards on the policy, recognizing Nichols as the "owner of the policy," put him at that time in the position of "the insured," that could not operate to make him "the insured" as of the date when he took the Liverpool insurance, because the law will not give any such retroactive effect to the indorsement for the purpose of destroying the policy. Such an effect is never given to such acts for the mere purpose of destruction, though often given when necessary for the purpose of preserving from that or similar consequences. What the company did, therefore, in recognizing Nichols as owner of the policy, as well for his benefit as the benefit of Lockwood, the mortgagee and holder, must be construed to make Nichols "the insured" as of that date, if at all, and not as bringing him into that relation for the purpose of annulling the policy under the clause now considered. If Nichols at that time became "the insured," the only consequence would be his responsibility as such for future breaches on his part, if any occurred, of the provisions of the policy. The gravest injustice would result from regarding him as "the insured" five days before the company consented to regard him as the owner of the policy, and holding that by the very act of so accepting him the company entitled itself to nullify its policy for something done by him before he became "the insured," or had been accepted as the owner of the policy. In my opinion, therefore, Nichols was not "the insured" under the policy in suit when he took the insurance in the Liverpool Company, and that his act in taking that insurance did not vitiate the defendant's policy, and that the consent of defendant to regard him as the owner of the policy, by the indorsement subsequently made on the policy, had no other effect than to bring him into such relations as those recognized and accepted by the defendant afterwards, when it received from him and retained the proofs of loss required by the policy to be made by the party entitled to the insurance.

But another answer to this defense is found in the fact that when Nichols took his policy in the Liverpool, etc., Company, he had an insurable interest in the property by reason of his contract with Smith of purchase and sale, and agreement to convey at a fixed day, accompanied by possession, etc. That policy must be held to attach to such insurable interest, and not to be within the clause of defendant's policy now under consideration. In Adams v. Insurance Co., 9 Hun, 45, one of the defenses was that plaintiff could recover, if at all, "only pro rata with another policy; that is, two-thirds of the amount of loss." The court held that other insurance mentioned in such a clause "does not include an insurance made by a mortgagee upon his interest as such" (Id. 48); and the court cited with approval, amongst other cases, Acer v. Insurance Co., 57 Barb. 68. In that case the language was: "The plaintiff's policy has this condition: 'If the assured, or any other person or parties interested, shall have existing, during the continuance of this policy, any other contract or agreement for insurance (whether valid or not) against loss or damage by fire, on the property hereby insured, not consented to by this company,' etc., 'then this insurance shall be void and of no effect,' etc. This is a general provision, and the question is whether the 'other persons or parties interested,' specified in the condition, refers merely to parties interested in the plaintiff's insurance, or to other parties who may have a different interest in the property from that held and owned by the plaintiff, and who may obtain insurance upon their interests in the same property. I am clearly of the opinion that the condition is limited to the former class, and that it was not the understanding or intention that any other person who might have a separate interest in the property, and not connected in interest with the plaintiff, and having no interest in his insurance, might avoid the plaintiff's contract by obtaining an insurance of his own interest in the property without the plaintiff's knowledge or consent. * * .* I think the interpretation I have adopted is not only more in consonance with justice, but with the rules of language. By this rendering, 'the parties interested' is construed to mean those interested with the plaintiff in his contract, instead of outside persons who might have some distinct and separate interest in the property. The same construction was given to similar language in the case in 12 and 16 Wend. [Tyler v. Insurance Co., 12 Wend. 507, 16 Wend. 385], before cited, and also in Insurance Co. v. Hone, 2 N. Y. 235. In that case such words were held to apply only to a double insurance of the same interest." The question in that case, it would seem, was quite analogous to the one now under consideration, and the court there held that the plaintiff's policy in that case was not affected by a policy issued to one Curtiss, to whom the plaintiff had contracted to sell the property. Curtiss occupied the same relation to the property in that case as that in which Nichols stood at the time he took the insurance in the Liverpool Company. The case of Adams v. Insurance Co. was afterwards affirmed by the court of appeals (70 N. Y. 166), the court distinctly concurring with the opinion of Judge Learned on the question now under consideration. The case of Sanders v. Cooper, 115 N. Y. 279, 22 N. E. 212, is not hostile to these views. The main question in that case was as to the effect of a provision avoiding the policy in suit if a prior insurance existed when it was issued, and that fact was not disclosed. The effort was to avoid the effect of that condition, when it appeared that there was a prior insurance, by showing that the agent who took the policy "was put upon inquiry, or might by the exercise of diligence have ascertained the truth" as to the existence of such former insurance. The court held that this was no answer to the defense. No such question is in this case. Another defense in that case was that the building burned was not the one described in and insured by the policy. The court held it not competent to show that the building destroyed was the one intended to be described in the policy, and that by mistake another, which was not intended to be insured, was the one described. The contract was held to be conclusive upon that question. I am at a loss to see any controlling bearing of that case upon the one now under consideration. Nor, in my opinion, is the case of Moore v. Insurance Co., 141 N. Y. 219, 36 N. E. 191, decisive of the questions here involved. In that case the court held that notice to an agent that an action of foreclosure of a mortgage of the insured premises was about to be commenced, and his verbal

assent thereto, did not constitute a waiver of a provision of the policy in a case where the policy provided that "no officer, agent, or other representative * * * shall have power to waive any provision or condition of this policy, * * * unless such waiver, if any, shall be written upon or attached hereto." If this case be within the ruling of the court in Moore v. Insurance Co., my duty is very plainly to follow and apply the ruling in that case, which I should certainly do, for two reasons: First, because it is the decision of the court of last resort; and, second, it is manifestly correct in law. The difference between that case and the present is that the waiver or change in the policy alleged in that case was not indorsed upon the policy as required by its plain terms. In this case the indorsements upon the policy were made by a competent officer, and the question is upon the effect, force, and meaning of such indorsements. If the indorsements can be legally or equitably construed to sustain the alleged liability of the defendant for the loss of the property insured, in my judgment, they clearly ought to be so construed. Their construction must be made in the light of the surrounding circumstances, and with a view to seeing what the parties intended to accomplish by them. When the first indorsement was made, to wit, that of August 18, 1892, Lockwood, the insured owner of the property, had sold the same to Smith, but wished to keep the policy alive and in full force, so that Smith should be its owner, but in case of loss it should be first payable to himself, as mortgagee, as his interest might appear. To carry this desire of Lockwood into effect was manifestly the purpose and intent of the indorsement, both on the part of Lockwood and of the company. Examine carefully the language of the indorsement:

"Warren E. Smith is now recognized as owner of this policy and the property mentioned as insured hereinunder, subject, nevertheless, to all the rules and conditions of this policy, none of which are hereby waived or avoided, and loss, if any, first payable to Hanford Lockwood, mortgagee, as interest may appear. Twenty thousand dollars incumbrance is hereby permitted.

"Dated at N. Y. City, August 18th, 1892.

"C. Patterson & Son, Gen'l Agents."

No question is made that this indorsement is not to be deemed the act of the company. It is, therefore, the defendant's act, and it is to be carried into effect by the court giving to it such construction as will fully accomplish its manifest intent and purpose. If to do so requires changes in the policy, consistent with law and competent for the parties to make, they are to be made, or to be deemed made, as the legal rights and the equities of the parties require. Lockwood is to be recognized and deemed, not as owner, any longer, but as mortgagee of the insured property, which may be incumbered by the present owner to the amount of $20,000; a mortgage to that amount, doubtless, then covering this, with other parcels of land. Smith is to be recognized as the legal or equitable owner of the policy, subject, of course, to Lockwood's right to receive the loss, if one occurs; and the insurance is to remain mutatis mutandis, as though originally made in that form. All rules and conditions of the policy are kept in full force, except as necessarily modified or changed by these new relations. Afterwards Nichols became a purchaser of the premises from Smith, subject to the mortgage of Lockwood. He entered into possession under his contract of purchase, and commenced making repairs. His contract of purchase gave him immediate possession as owner, but the conveyance was to be made to him at a later date, which happened to be a short time after the fire. When these things occurred, Mr. Lockwood again applied to the general agents of the company, who made this indorsement upon the policy:

"George E. Nichols is now recognized as owner of this policy and the property mentioned as insured hereinunder, subject, nevertheless, to all the rules and conditions of this policy, none of which are hereby waived or avoided.

"Dated at N. Y. City, Dec. 27th, 1892.     C. Patterson & Son, G'l Agents."

This was done at the request of Mr. Lockwood, still holder of the mortgage secured by the policy, with the full assent of the company. There was no intent to deprive Lockwood of that security, or his rights under it, but,

on the contrary, to maintain and protect his rights, and his title to receive payment of any loss that might occur. Its legal and equitable effect and object were to recognize the change of ownership, legal or equitable, of the assured property, in such form and with such force as should continue the policy as a valid instrument, nothwithstanding, and subject to, the change in ownership of the property, and in the relations of the parties to it and towards the policy. The purpose was to keep alive the insurance in full force and effect for the benefit of Lockwood as mortgagee, and Nichols, the new purchaser, notwithstanding the changes made in the ownership of the property. This new consent was procured by Lockwood, and delivered to him. Its purpose was to have Nichols substituted, as owner of the property and of the policy, for Smith, and to maintain in full vigor the rights of Lockwood as mortgagee, entitled to receive the proceeds in case of loss, and whatever stood in the way of those objects was to be modified or removed, so that the intended purpose would be accomplished. No deception was practiced to mislead or deceive the defendant, on the part of either of the persons concerned. It has already been shown that Nichols had previously applied and taken out a policy in another company for the sum of $3,500, before he became the owner of the defendant's policy with its consent, or had any legal right therein as the insured in law or equity. This act could not avoid the policy of defendant, of which Smith had been, by the company's consent, made owner, with loss, if any, payable to Lockwood. The act of Smith in contracting to sell to Nichols the insured property did not and could not operate to make Nichols the insured. He held the property only by contract of sale and purchase, to be consummated by subsequent conveyance, and the indorsement of the company, recognizing him as owner of the property and policy, is satisfied by his equitable relation and ownership, since the sole purpose was to keep in life and vigor the right of Lockwood to receive as mortgagee the proceeds of any loss. If the indorsement on the policy did not have that effect, it had none, but left Lockwood's rights under the first indorsement in full force, unimpaired by any act Nichols had done, either in taking out the policy in the Liverpool Company, or in making the contract of purchase and sale. There was therefore no such breach of conditions of the policy, either by Lockwood or Smith or Nichols, as justified the defendant in refusing to pay the loss.

Another defense strenuously urged is that the proofs of loss were not served on defendant by the proper party. The policy requires such proofs to be served by the insured within a prescribed period. In due season the proofs of loss were served by Nichols. These proofs were kept and retained without objection that they were not served by the proper party, or were not proper in form or substance. Under the circumstances of this case, I feel bound to hold that the defendant is estopped, by receiving and keeping these proofs from Nichols, in the manner and form shown, from asserting that they were not served by the proper party, or that Nichols did not occupy a relation to the company which entitled him to make whatever service of proofs of loss were requisite to give his claim a standing in court under the policy. The company, by its own act, had put Nichols in a position where his equitable rights were, in my opinion, such as entitled him to serve the proofs. So far as affects this question, the company had made Nichols "the insured" when they recognized him as "owner of the policy and property"; the loss, if any, to be paid upon the obligation to Lockwood, which he had assumed, and which was a lien on the insured property. Nichols was also the assignee of all the rights of Lockwood to recover in this action, and may, as such assignee, assert all those rights. His own rights were so connected with those of Lockwood that his action in making and serving proofs of loss, under the circumstances, Lockwood could assert, under the consent of the company indorsed on the policy, as a basis of his own right to collect the loss. Under such circumstances, the company is estopped from asserting that the proofs, etc., were not served or made by a proper person. If they had been refused or returned in proper season on any ground of that kind, they could have been renewed by another party also in interest.

If these views be right, the defense wholly fails in respect to the several questions discussed. It is insisted, however, that there was a fraudulent

overvaluation of the loss sustained in the claim presented. This is a question of fact, upon the evidence. I am of opinion that such alleged fraud is. not proven. The assured procured a valuation by competent persons, whose testimony shows that it was made in good faith. My finding upon the evidence must be against the alleged fraud.

The only remaining question is the amount plaintiff is entitled to recover. This question depends upon one already considered, to wit, whether the policy taken by Nichols in the Liverpool, etc., Company was upon the same interest insured to Lockwood. In its bearing upon another question, that point has already been considered. His policy was upon a different interest, and it seems clear that the company could not compel Lockwood, had he been plaintiff suing as mortgagee, to apportion his claim by any policy Nichols had taken in another company upon the interest he had acquired in the property. Nor do 1 think that Nichols, on becoming, with the consent of the company, the owner of the policy issued to Lockwood, subject to Lockwood's claim to receive any loss thereon, as mortgagee, subjected that policy to diminution under the clause relied upon. That was not the intention of any of the parties, and is not the necessary effect or construction of their acts. The plaintiff is assignee of Lockwood's interests, as well as of those of Nichols in the Lockwood policy. He is entitled to recover the full amount, to wit, $6,000, and interest, amounting in all to $6,510, with costs. Judgment is directed accordingly.

Argued before BROWN, P. J., and DYKMAN and PRATT, JJ.

Theron G. Strong, for appellant.
A. H. Sawyer, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of referee.

---

TRUSTEES OF AMHERST COLLEGE et al. v. RITCH et al.

(Supreme Court, General Term, First Department. December 18, 1895.)

1. WILLS—ESTATE OF LEGATEE—PROMISE TO HOLD FOR ANOTHER.
   Where a testator devises his residuary estate to his executors absolutely, but with the understanding that they shall distribute the same among certain beneficiaries named in the will, the residuary legatees acquire no. personal interest in the residuum, but take it as trustees.

2. SAME—BEQUEST TO CHARITY—VALIDITY.
   Laws 1860, c. 360, § 1, providing that no person having a husband, wife, child, or parent, shall bequeath to any charitable corporation more than one-half of the estate after payment of debts, etc., is for the protection of the class of persons specified therein, and if they, voluntarily and for a valuable consideration, release their interests under the will, no one else can impeach its validity.

Appeal from special term, New York county.

Action by the trustees of Amherst College, the trustees of Dartmouth College, the trustees of Hamilton College, the University of Rochester, and the president and trustees of Williams College against Thomas G. Ritch and others. Judgment was ordered directing that the residuary estate devised and bequeathed to defendants Ritch, Bulkley, and Vaughan was received and held by them in trust for plaintiffs Yale College, Cornell University, Wesleyan University, Trinity College, the Hampton University of Virginia, Lincoln University, the University of Virginia, Randolph and Lincoln College, Columbia College, Union College, and the·